# Order

**Michigan Supreme Court**
**Lansing, Michigan**

November 10, 2011

143855-6 & (26)

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

TRACY NEAL, and All Others Similarly Situated,
   Plaintiffs-Appellees,

v

DEPARTMENT OF CORRECTIONS, et al,
   Defendants-Appellees,

and

OAKLAND COUNTY REIMBURSEMENT UNIT,
   Intervenor-Appellant.
_____

SC: 143855-6
COA: 305186
Washtenaw CC: 96-006986-CZ

NICOLE ANDERSON, and All Others Similarly
Situated,
   Plaintiffs-Appellees,

v

DEPARTMENT OF CORRECTIONS, et al,
   Defendants-Appellees,

and

OAKLAND COUNTY REIMBURSEMENT UNIT,
   Intervenor-Appellant.
_____/

COA: 305195
Ct of Claims: 03-000162-MZ

   On order of the Court, the motion for immediate consideration is GRANTED. The application for leave to appeal the October 6, 2011 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

   MARKMAN, J. (*dissenting*).

I respectfully dissent. The Michigan Department of Corrections (MDOC) entered into a class-action settlement agreement in 2009 to pay $100 million to plaintiffs – an estimated 800 female prisoners alleging that they had been the victims of sexual misconduct by state prison personnel. In connection with the settlement, the MDOC also agreed that it would not publicly disclose the names of individual plaintiffs. As a result, not only will the public be deprived of knowledge as to whom $100 million in state revenues is to be disbursed, but the victims of plaintiffs' crimes, who are owed restitution, will be deprived of knowledge as to whether those who owe them such restitution, will be sharing in this settlement. The Oakland County Reimbursement Unit (OCRU), the agency charged with collecting court-ordered restitution on behalf of victims from defendants sentenced in Oakland County, asks this Court to stay the distribution of proceeds until issues it has raised concerning the settlement can be resolved. I would grant the stay.

MCL 791.220h provides:

> (1) If a prisoner is ordered to pay *restitution* to the victim of a crime and the department receives a copy of the restitution order from the court, the department shall deduct *50%* of the funds received by the prisoner in a month over $50.00 for payment of restitution. The department shall promptly forward the restitution amount to the crime victim as provided in the order of restitution when the amount exceeds $100.00, or the entire amount if the prisoner is paroled, transferred to community programs, or is discharged on the maximum sentence. The department shall notify the prisoner in writing of all deductions and payments made under this section. The requirements of this subsection remain in effect until all of the restitution has been paid.

> (2) *Any funds owed by the Michigan department of corrections* or to be paid on behalf of one or more of its employees to satisfy a judgment or settlement to a person for a claim that arose while the person was incarcerated, shall be paid to satisfy any order(s) of *restitution* imposed on the claimant that the department has a record of. The payment shall be made as described in subsection (1). The obligation to pay the funds, described in this section, shall not be compromised. As used in this section, "fund" or "funds" means that portion of a settlement or judgment that remains to be paid to a claimant after statutory and contractual court costs, attorney fees, and expenses of litigation, subject to the court's approval, have been deducted.

> (3) The department shall not enter into any agreement with a prisoner that modifies the requirements of subsection (1). Any agreement in violation of this subsection is void. [Emphasis added.]

MCL 600.5511 provides, in pertinent part:

> (2) Subject to section 220h of 1953 PA 232, MCL 791.220h, and the crime victim's rights act, 1985 PA 87, MCL 780.751 to 780.834, *any damages awarded to a prisoner in connection with a civil action brought against a prison* or against an official, employee, or agent of a prison shall be paid directly to satisfy any outstanding *restitution* orders pending against the prisoner, including, but not limited to, restitution orders issued under the state correctional facility reimbursement act, 1935 PA 253, MCL 800.401 to 800.406, the prisoner reimbursement to the county act, 1984 PA 118, MCL 801.81 to 801.93, 1982 PA 14, MCL 801.301, and the crime victim's rights act, 1985 PA 87, MCL 780.751 to 780.834, any outstanding costs and fees, and any other debt or assessment owed to the jurisdiction housing the prisoner. The remainder of the award after full payment of all pending restitution orders, costs, and fees shall be forwarded to the prisoner.
>
> (3) Before payment of any damages awarded to a prisoner in connection with a civil action described in subsection (2), the court awarding the damages shall make reasonable efforts to *notify* the victims of the crime for which the prisoner was convicted and incarcerated concerning the pending payment of damages. [Emphasis added.]

The OCRU, in my judgment, raises compelling arguments that, pursuant to MCL 600.5511(2) and MCL 791.220h(2), *all* of the funds received by prisoners owing restitution should *first* be disbursed to the victims owed restitution, and that, pursuant to MCL 600.5511(3), the victims are entitled to notice before any funds are disbursed to prisoners. However, the MDOC here is disbursing to the victims in each of six yearly installments (presumably until full restitution has been made) only 50% of the settlement funds paid to prisoners owing restitution, and the MDOC has refused to provide prior notice to the victims or to the OCRU as to which prisoners owing restitution are recipients of the settlement in this case.

By refusing to stay the Plan of Allocation entered into between plaintiffs and the MDOC, this Court fails to recognize that the Legislature, in seeking to ensure the fullest possible restitution for the victims of crime, has also apparently determined that the attainment of this objective is practically contingent upon compliance with particular legal procedures established by the Legislature, in particular by legal requirements that notice be provided to victims *before* prisoners receive the proceeds of civil settlements, and that restitution be fully paid *before* prisoners receive any part of such proceeds. That is, the procedures established in the law are designed to ensure that victims are fully

restituted, and a failure to comply with these procedures may well in some instances undermine the ability of criminal victims to effectively secure the restitution that they are owed.

The majority's refusal to stay the further distribution of settlement proceeds will, in my judgment, almost certainly prejudice the ability of some unknown number of victims to ever receive the full amount of restitution to which they are entitled. And as a result, some larger portion of the settlement will be disbursed to persons who *owe* restitution, and some smaller portion will be disbursed to persons who are *owed* restitution, in contravention of what OCRU argues is required by the law.

First, because the MDOC has agreed under the Plan that neither the public, nor the OCRU, nor the individual victims of plaintiffs' crimes are to be apprised beforehand as to which prisoners have been awarded a share of the settlement, some victims will simply be unaware of the changed financial circumstances of those who have perpetrated crimes against them. These persons will be entirely dependent upon the MDOC for an accurate accounting of who is owed restitution and in what amount. The OCRU – whose principal mission it is to collect court-ordered restitution – will be unable to assist these victims and to correct inevitable errors in MDOC's records because it too is being denied access to any list of prisoners receiving settlement funds. Any inaccuracies in MDOC's records will thus ensure that some victims will never be made aware that the restitution owed them might have been practically obtainable as a result of the settlement. Moreover, the OCRU argues that the procedures followed by the MDOC are contrary to MCL 600.5511(3), which is predicated upon the idea that the victim and the OCRU are entitled to be informed *before* public funds are disbursed to prisoners from the state treasury, so that all available efforts can first be undertaken to ensure that restitution in the proper amount is paid to criminal victims from such funds.

Second, persons owed restitution in excess of 50% of the total amount of plaintiffs' share of the settlement proceeds may well be prejudiced in their ability ever to secure full restitution. For example, victim Smith is owed $10,000 in restitution from prisoner Jones, and prisoner Jones is awarded $18,000 in a settlement, to be paid, as here, in six annual installments of $3000 each. Under the MDOC's 50% plan, Smith will be paid 6 x $1500 or a total of $9000. Instead then of being fully restituted, as he could have been from Jones' award, Smith will still be owed $1000, and his only recourse will be to undertake new legal actions to attempt to recover whatever may be left of Jones' settlement – legal actions replete with attorney's fees and directed toward a person who would have had entirely no incentive, or perhaps no self-discipline, to have preserved settlement proceeds for up to five or six years for the benefit of a victim whose victimhood she had caused in the first place.

I would immediately stay any further disbursements to prisoners until the Court of Appeals has finally determined: (a) whether notice to the victims is required by law to be provided by the MDOC *before* any proceeds of a class-action settlement are disbursed to prisoners; and (b) whether full, and not half, payments of restitution are required by law to be disbursed to victims of plaintiffs' crimes *before* any disbursements are made to plaintiffs.

YOUNG, C.J., joins the statement of MARKMAN, J.

HATHAWAY, J. I am recusing myself from participating because a member of my family is counsel for one of the parties in this matter. See MCR 2.003(C)(1)(g)(ii).

MARY BETH KELLY, J. I am recusing myself from this case based on a personal relationship with one of the plaintiffs which, in my judgment, gives rise to an appearance of impropriety. MCR 2.003(C)(1)(b).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 10, 2011

_____
Clerk

h1108